

# THE ATTORNEY GENERAL

# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

February 25, 1952

Hon. John H. Winters  
Executive Director  
State Department of  
  Public Welfare  
Austin, Texas

Opinion No. V-1413

Re: Authority of Waco State Home to participate in Board Local Fund appropriations and in the Special Reserve Account, and authority to transfer funds between line item appropriations made to the Home for the biennium ending August 31, 1953.

Dear Sir:

You have requested an opinion of this office on the several questions detailed below pertaining to the appropriations made to the Waco State Home for the biennium ending August 31, 1953.

In 1949 the Legislature transferred the management and control of the Waco State Home to the Board for State Hospitals and Special Schools[1] from the Board of Control. H.B. 1, Acts 51st Leg., R.S. 1949, ch. 316, p. 588 (Art. 3174b, V.C.S.). As a consequence the Board was in control of the Waco Home at the time of passage of the appropriation bill by the 52nd Legislature, and all financial provisions relating to the Home in the general appropriation bill for the biennium beginning September 1, 1951 and ending August 31, 1953 (H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228) are couched in terms of authority to be exercised by the Board.

However, the management and control of the Waco State Home was transferred from the Board to the State Department of Public Welfare by the 52nd Legislature, effective October 1, 1951. H.B. 540, Acts 52nd Leg., R.S. 1951, ch. 485, p. 860 (Art. 3255b, V.C.S.).

This transfer has raised many questions pertaining to fiscal operations of the Waco State Home for the remainder of this biennium. A determination of the authority now vested in the Department of Public Welfare,

---

[1] The Board for State Hospitals and Special Schools will hereafter be referred to as the Board.

and that which remains in the Board, if any, with regard to the Waco State Home finances for the remainder of this biennium will eliminate many of these problems.

Section I of House Bill 540, supra, provides:

"Effective the first day of the month after this Act becomes law, the management, government, and control of the Waco State Home, Waco, Texas, shall be and are hereby transferred from the Board of Texas State Hospitals and Special Schools to the State Department of Public Welfare and all other facilities hereafter established by the State for the care and education of dependent and neglected children shall be under the control and management of the State Department of Public Welfare.

"The State Department of Public Welfare shall succeed to and be vested with all the rights, powers, duties, facilities, personnel, records, and appropriations now held and which will be appropriated for the biennium beginning September 1, 1951, by the Board for Texas State Hospitals and Special Schools for the care of dependent and neglected children now in, or who may hereafter be committed to the Waco State Home, Waco, Texas."

The critical provision above is the statement that "The State Department of Public Welfare[2] shall succeed to and be vested with all the rights, powers, duties, . . . and appropriations now held . . . by the Board for Texas State Hospitals and Special Schools for the care of dependent and neglected children . . ."[3]

It will be noted that this Act transferred the rights, powers, duties, and appropriations "now held" by the Board. It is therefore essential to determine the moment in time contemplated by the words

_____

2/ The State Department of Public Welfare will hereafter be referred to as the Department.
 3/ Emphasis added throughout.

"now held" so we can ascertain what rights, powers, and duties were held by the Board at that time.

In the early case of Fisher v. Simon, 95 Tex. 234, 66 S.W. 447 (1902) it is held that the word "now" in an Act providing for notice of sale as "now required by law" meant that notice was to be given in the manner required by law at the time the Act in question became effective. Applying this rule to the facts before us, we find that the provisions of House Bill 540 became effective on October 1, 1951. Therefore, the problem for determination is the rights, powers, duties, and appropriations held by the Board on October 1, 1951.

The provision transferring appropriations "Which will be appropriated for the biennium beginning September 1, 1951" could indicate that the "now held" provision related to some other appropriations made prior to September 1, 1951. This seeming inconsistency is explained by the fact that the bill contained an emergency provision, indicating that it was contemplated that the bill go into effect immediately, which would have been prior to September 1, 1951. However, the Senate passed the bill viva voce, and, under the provisions of Article III, Section 39 of the Texas Constitution the Act could not become law until 90 days after the adjournment of the Legislature.[4] The result of this enforced wait is that the transfer of appropriations "now held" and "appropriations which will be appropriated for the biennium beginning September 1, 1951" are synonymous terms.

Finally, it must be noted that the rights, powers, duties, and appropriations transferred were those held by the Board for the care of dependent and neglected children. This did not transfer rights, powers, duties, and appropriations held by the Board, the exercise of which, with regard to the Home, would affect other institutions which remain under the jurisdiction of the Board. That the Legislature took from the Board only those rights, powers, duties, and appropriations which the Board held or exercised on behalf of the Home alone is clear from a reading of the whole Act, including the emergency clause. There was obviously no intent to give to the Department any form of authority which, in its exercise, would in some manner affect institutions other than the Waco Home.

_____

[4]   The act became law on September 7, 1951, the 52nd Legislature having adjourned on June 8, 1951.

With the above holdings in mind, we will now turn to your specific questions.

1. Will the Waco Home be eligible for the $36,500 appropriation made to it for the 1952-53 fiscal year in Line Items 30, 31, and 32, all of which come from the Board Local Fund? H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1273.

You state that the Comptroller of Public Accounts is of the opinion that you cannot share in the Board Local Fund during the 1952-53 fiscal year since you will not be under the jurisdiction of the Board at any time during that fiscal year. We have reached a different conclusion. The Act transfers to the Department all rights held by the Board on behalf of the Home on October 1, 1951. One of the rights held for the Home on that date was the right given by the appropriation bill (H.B. 426) to share in the Board Local Fund to the extent of $36,500 in 1952-53. This right is now held by the Department on the Home's behalf and the Home is entitled to that amount at the proper time.

At the same time it must be pointed out that one of the duties placed upon the Board on behalf of the Home by the general appropriation bill is the duty of placing enumerated local funds in the Board Local Fund. This duty has now passed to the Department, and it is still required that the proper local funds of the Home be placed in the Board Local Fund and not in some other local fund. Sec. 10, Art. II, H.B. 426, supra, at p. 1294.

2. Would the Waco State Home be eligible to share in the $600,000 Special Reserve Account created by Section 9a of Article II of House Bill 426 (p. 1294) if the need arose for emergency funds?

On October 1, 1951, the Board held on behalf of the Home the right to share in the Special Reserve Account if the necessity for it arose. This right was transferred to the Department, and it now holds this right on behalf of the Home. However, the decision of the necessity for funds and the amount to be received by each is held by the Board on behalf of all hospitals and special schools. Therefore, since the use of the power would affect all institutions under its jurisdiction the Board still retains

the right of determining the need for and extent
to which the Waco Home may participate in this fund.

3. May the Department transfer funds from
one line item appropriation to the other, and speci-
fically from General Revenue Fund line items to Board
Local Fund line items and from Board Local Fund items
to General Revenue Fund items?

Section 7 of Article II, House Bill 426
(p. 1293) gave to the Board authority to make trans-
fers between line item appropriations of institutions,
between line item appropriations of the Central Office,
and between institutions. Att'y Gen. Op. V-1305 (1951).
The authority to transfer between line items of the
appropriation to the Home was one of the powers trans-
ferred to the Department since the exercise of this au-
thority has no effect upon other institutions. How-
ever, the other two types of transfers must still be
made by the Board.

There is no restriction upon the manner of
transfer between the line item appropriations to the
Waco Home. Section 10(d) of Article II, House Bill
426 (p. 1295) provides:

"(d) All items herein appropriated to
the several institutions including the Cen-
tral Office, for bond premiums, post office
box rent, land rental, postage, telephone,
telegraph, heat, water, light, power, travel
expenses, maintenance of structures and
equipment, shall be paid from the Board Local
Fund. It is further provided that the items
herein enumerated shall not be supplemented
from any other funds appropriated in this
Article, except as provided in Section 7(a)
and (b) and Section 9, as provided in this
Article."

The exception provided is that no funds appro-
priated for these items shall be supplemented from any
other funds appropriated in this Article[5] except through
Sections 7(a) and (b) and Section 9, relating to the

---

[5] I.e., Article II, dealing with eleemosynary insti-
tutions.

transfer and Special Reserve Account provisions.
Therefore, there is no limit upon the amount of
funds that may be placed in any line item account,
either from general or local funds, so long as
the funds are placed in the account by a transfer
between line items or by receipt of additional
money from the Special Reserve Account.

4. May the Department create new item
classifications and transfer appropriations into
such new classifications?

The authority to make transfers is only
for the purpose of transferring between line items.
There is no authority to create new item classifi-
cations. If the item desired does not fall within
one of the present classifications, it cannot be
purchased.

5. When there has been a transfer of
General Revenue or Board Local funds from one line
item fund to a line item fund of opposite origin,
what fund should be charged when the transferred
money is expended?

When a transfer is made, there should be
a bookkeeping transaction removing the amount from
the line item fund from which it is transferred and
placing it to the credit of the line item fund to
which it is being transferred. When the money is
expended, it must then be charged to the line item
account which gives the authorization to spend the
money for the article in question. The fact that
the funds originally came from General Revenue or
Board Local Funds is of no significance after the
transfer is made.

## SUMMARY

H.B. 540, Acts 52nd Leg., R.S. 1951,
ch. 485, p. 860 (Art. 3255b, V.C.S.),
transferred to the State Department of
Public Welfare all rights, powers, duties,
and appropriations held by the Board for
State Hospitals and Special Schools on be-
half of the Waco State Home on October 1,
1951.

The right to receive $36,500 from the Board Local Fund for the 1952-53 fiscal year (H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, at p. 1273) was transferred to the Welfare Department.

The right to participate in the $600,-000 Special Reserve Account (H.B. 426, p. 1294) was transferred to the Welfare Department, but the Board retains the power of deciding who shall participate, and to what extent, since this is a power to be exercised on behalf of all eleemosynary institutions.

The Welfare Department has authority to make transfers between line item appropriations to the Waco Home (H.B. 426, p. 1272) but has no authority to create new item classifications. When money is expended it must be charged to the line item appropriation that authorizes the expenditure, and the fact that the money originally came from General Revenue or the Board Local Fund is of no significance after the transfer is made.

APPROVED:

C. K. Richards
Trial & Appellate Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

EWT:wb

Yours very truly

PRICE DANIEL
Attorney General

By E. Wayne Thode
E. Wayne Thode
Assistant